## FIDELITY & DEPOSIT CO. OF MARYLAND v. BARDSLEY.

Circuit Court of Appeals, Ninth Circuit.
November 21, 1927.

No. 5227.

1. **Sheriffs and constables ⚖168(6)—In action on bond for arrest and assault by deputy sheriff without warrant, both lawfulness of arrest and use of unnecessary force held in issue.**

In an action on the bond of a sheriff for unlawful arrest, and assault by a deputy, without a warrant, the lawfulness of the arrest, as well as whether unnecessary force was used in making it, *held* in issue under the pleadings.

2. **Damages ⚖143, 145—Testimony as to pain and suffering and impairment of earning capacity resulting from injury held admissible without allegation of special damages.**

On an issue as to damages for a personal injury which destroyed the sight of one of plain-tiff's eyes, testimony as to his pain and suffering and the effect of the injury on his earning capacity *held* admissible, though special damages were not pleaded.

3. **Damages ⚖143—Consequences naturally resulting from injury may be shown under general allegations.**

Consequences necessarily and naturally resulting from an injury may be shown under general allegations of damages.

In Error to the District Court of the United States for the Southern Division of the District of Idaho; Charles C. Cavanah, Judge.

Action at law by Charles Bardsley against the Fidelity & Deposit Company of Maryland. Judgment for plaintiff, and defendant brings error. Affirmed.

Frank T. Wyman and Wm. Healy, both of Boise, Idaho, for plaintiff in error.

Stone & Jackson, of Caldwell, Idaho, for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The defendant in error, claiming to have been arrested and unlawfully assaulted by a deputy sheriff of an Idaho county, brought this action for damages against the surety upon the sheriff's official bond. There was a verdict for $5,500 and from the judgment thereon the defendant brings error. Two assignments have been argued, one involving instructions given and refused upon a certain point, and the other admissions of evidence touching the amount of damages.

[1] Inasmuch as admittedly the evidence was sufficient to take the case to the jury, an extended statement thereof is unnecessary. Without a warrant, the officer arrested plaintiff while both of them were attending a public dance, upon the theory, presumably, that by being boisterous, profane, and quarrelsome he was committing a breach of the peace. In making the arrest or immediately thereafter he struck the plaintiff upon the head with his revolver, knocking him down and seriously injuring, if not wholly destroying, one of his eyes. Defendant's contention is that the case was tried upon the theory that the only issue was the reasonableness of the force employed by the officer, and that therefore the court erred, in its instructions to the jury, in coupling with that issue the question whether plaintiff was, under the circumstances, lawfully subject to arrest at all. It asked the court to say to the jury: "When an officer arrests or attempts to arrest a person, it is the duty of the person to submit

to the arrest, and not in any manner to resist by word or act. So in this case, when the deputy sheriff sought to arrest him, it was Bardsley's duty to submit to the arrest and not to resist the officer by force or otherwise."

The first sentence the court gave, and added: "And in this case, if you find from the evidence that the plaintiff was committing a public offense or disturbing the peace, as found (defined?) in the instructions, it was his duty to submit to the arrest * * * and not to resist it." The court further said to the jury: "So the first question for your consideration is whether * * * the plaintiff was disturbing the public peace, * * * and while doing so the deputy sheriff, Benham, attempted to place him under arrest, using such force as appeared to him to be reasonably necessary. * * * Should you so find these to be the facts, neither the sheriff nor the deputy sheriff, Benham, nor the defendant bonding company would be liable. But if, upon the other hand, you believe * * * that the plaintiff was not either disturbing the public peace or committing any public offense at the dance, and did not resist the officer or attempt to assault him, and that the officer used force unreasonably necessary and assaulted the plaintiff while attempting to place him under arrest, then * * * the defendant became liable in the case. Touching that question or issue, the testimony in the case is highly conflicting, and it is very difficult to reconcile it."

It was not error to decline to give the requested instruction. That a citizen is not bound under any and all circumstances to submit to arrest without warrant is too well settled to require discussion. Apparently conceding that the rule is inapplicable to a case where the officer attempts to arrest without right or probable cause, defendant bases its argument, in the main, upon the assumption that the lawfulness of the arrest here was admitted by the plaintiff, and hence the requested instruction should have been given without the qualifying condition. But we fail to find in the record any warrant for this assumption. It may be true that the complaint is insufficient to authorize recovery for an illegal arrest, inasmuch as it seems to contain no averment of damage resulting from the arrest as such. But the rightfulness of the arrest is not admitted, either expressly or by necessary implication. To the contrary, after narrating the circumstances of the arrest, which is not in terms characterized as being either rightful or wrongful,

and charging that thereupon the officer willfully and unlawfully struck him, plaintiff specifically avers that the sheriff did not well, truly, and faithfully perform all the duties of his office as required by his bond, "in this: That in *making the arrest of plaintiff and* in striking and injuring" him the deputy pretended to be, and in fact was, acting officially, and "that *said acts* of the said deputy sheriff constituted a breach of the official bond" of the sheriff. By specific denials of these averments there was put in issue the question of the rightfulness of the arrest as well as the propriety of the blow.

Moreover, defendant adduced much testimony respecting plaintiff's conduct at the dance, which the deputy deemed to constitute a breach of the peace, authorizing arrest without warrant. True, it may be, as now stated, that at the trial counsel for plaintiff did not seriously challenge the right to arrest, and that this evidence may also be considered material as having a bearing upon the question of the reasonableness of the deputy's act in striking plaintiff. But, in view of the pleadings and the evidence thus offered by the defendant, the court could not assume that the right to arrest was conceded, or with propriety say to the jury, as in effect was requested, that the officer had such right. At no time, either by exceptions to the instructions or otherwise, was the court advised of the contention now made that plaintiff made such concession.

True, defendant excepted to the failure to give the requested instruction and to the giving of the portions of the instructions now assailed, but it did not assign as the reason for its exception the theory here advanced. Upon the other hand, as one of the grounds of its motion for a nonsuit, it had urged upon the court the failure of the evidence to show that the officer had a warrant, "or that the circumstances existed which would authorize an arrest without a warrant." How could such position be consistently taken, if, as now contended, the rightfulness of the arrest was conceded, and both parties were trying the case upon that theory? In the light of these considerations, it is unnecessary specifically to discuss the instructions given as hereinbefore set out; for, if the requested instruction was properly declined, conversely, the instructions given were both correct and appropriate.

[2] The other point urged is that "under the allegations of the complaint it was error to admit proof of special damages in the way of lost employment and impaired earning capacity." The plaintiff concedes the

rule that, to be recovered, special damages must be alleged, and the real question is whether the evidence assailed relates to "special damages." Plaintiff averred that by the blow he was felled to the ground, his face was bruised and lacerated, and the sight of his left eye was totally and permanently destroyed; that as a result he was in the hospital for four weeks, and that he suffered and continues to suffer great physical pain and mental anguish; that because of the loss of his eye he will, for the remaining period of his lifetime, continue to suffer intense mental anguish, humiliation, inconvenience, and embarrassment; and that he was obliged to employ a physician at an expense of $120, and because of such injuries he has been damaged in the sum of $9,880.

Over defendant's objection plaintiff was permitted to testify that he was a trained automobile mechanic and a journeyman electrician, in which employments he had earned from $6 to $8 a day prior to his injury. He was further permitted to say that, because he could not always see plainly, and because of the fear of injury to his eye, his speed in working was cut down, as he estimated, to the extent of 25 per cent.. There was considerable other testimony along these lines, and to the effect that plaintiff would be disqualified for certain kinds of employment, but not that he had lost any specific job or employment.

[3] We think the evidence was admissible. For the most part, it may not have been necessary, for it added little, if anything, to the common knowledge which intelligent jurors may be presumed to possess. The loss of an eye is such an injury as necessarily implies physical pain, mental distress, and a measure of impairment of physical capacity or efficiency. Consequences necessarily and naturally flowing from an injury may be shown under general allegations. The evidence under consideration simply tended to enlighten the jurors touching the extent of the injury in respect to its effect upon plaintiff's general capacity, thus possibly enabling them a little more justly to estimate his damage. The decided cases, more or less in point, while generally in harmony in stating the general rule, not unnaturally exhibit a measure of apparent conflict in its application to specific facts and circumstances. They are numerous, and we do not attempt to review them. The following may be cited as tending to support the view we take: Conner v. Pioneer F. Corp. (C. C.) 29 F. 629; Southern Pac. Co. v. Hall (C. C. A.) 100 F. 760; Wade v. Le Roy, 61 U. S. (20 How.)

34, 15 L. Ed. 813; Graham v. Coeur D'Alene, etc., 27 Idaho, 454, 149 P. 509; Flanagan v. B. & O. Ry. Co., 83 Iowa, 639, 50 N. W. 60; Treadwell v. Whittier, 80 Cal. 574, 22 P. 266, 5 L. R. A. 498, 13 Am. St. Rep. 175.

It is only necessary to add we do not think the allegation that plaintiff will "permanently suffer mental anguish, inconvenience, and embarrassment" is so narrow and specific as to preclude the idea of impairment of physical efficiency, such as the loss of an eye necessarily implies, or that defendant could reasonably have been misled thereby. "Inconvenience" necessarily imports physical handicap.

Judgment affirmed.