(February 24, 1917.)

## C. H. SWEETEN, Respondent, v. H. H. EZELL, Sheriff of Oneida County, Idaho, Appellant.

[163 Pac. 612.]

SALE OF PERSONAL PROPERTY ON EXECUTION—DELIVERY OF POSSESSION—CONFLICT OF EVIDENCE.

1. Sec. 3170, Rev. Codes, provides that "every transfer of personal property other than a thing in action, and every lien thereon, other than a mortgage when allowed by law, is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession. . . . . *Held,* that where A purchases, at an execution sale, hogs belonging to B, and sold thereat in partial satisfaction of a judgment against him, and he leaves them in B's possession paying him to care for them, sec. 3170 does not apply, and B's judgment creditors obtain no rights against A in respect to the hogs by reason of his failure to remove them from B's possession.

2. An appellate court will not disturb the judgment of a trial court because of conflict in the evidence where there is sufficient proof, if uncontradicted, to sustain it.

[As to retention of possession of chattels by judgment debtor after sale of same, see note in 15 **Am. Dec.** 671.]

APPEAL from the District Court of the Fifth Judicial District, for Oneida County. Hon. J. J. Guheen, Judge.

Action for conversion of personal property and damages. Judgment for plaintiff. *Affirmed.*

T. E. Ray, for Appellant.

Davis & Evans, for Respondent.

Counsel cite no authorities.

MORGAN, J.—Respondent instituted this action to recover the value of 235 head of stock hogs, more or less, which, he alleged, appellant wrongfully took from his possession and sold and which he claims were his property at the time of the taking, together with damages and costs.

Appellant answered alleging that the property, at the time of the taking, belonged to Warren Sweeten, brother of respondent, and that he, the appellant, as sheriff of Oneida county, made the levy and sale under and by virtue of a writ of execution issued in an action wherein the Utah Association of Credit Men obtained a judgment against Warren Sweeten.

By stipulation the cause was tried by the judge without a jury and resulted in a judgment in favor of respondent for $1,100, the value of the hogs, together with $200 damages sustained as a result of the taking and selling, and costs of action.

Appellant moved for a new trial. His motion was denied and he has appealed from the judgment and from the order denying his motion.

Two questions must be decided in order to determine this case, namely: Who was the owner of the 235 head of hogs sold by appellant, the respondent, or his brother, Warren Sweeten? If it is determined that respondent was the owner at the time of the levy and sale, was the amount of the judgment awarded by the trial court reasonable and proper?

We will briefly review the material evidence submitted upon the trial.

In substance, respondent introduced evidence to the effect that the Utah Association of Credit Men obtained a judgment for something over $2,450 against Warren Sweeten and levied upon his personal property and that, at an execution sale held on May 5, 1915, said property, which consisted of about 275 head of hogs, was sold to respondent for $1,500.

Respondent testified that immediately after the sale he took possession of the hogs and that thereafter he sold part of them and bought others which he placed with those remaining and that he hired his brother, Warren Sweeten, to help him in operating the farm, whereon they were kept and which formerly belonged to his brother, and in caring for the stock and that he paid him a salary of $50 per month for his services. He further testified that although, at times, his brother bought and sold hogs, he did it as his, respondent's, agent.

In the suit of the Utah Association of Credit Men against Warren Sweeten, as above referred to, the judgment was only satisfied in part by the sale of the hogs which respondent purchased and a second writ of execution was issued and the hogs now claimed by him were levied upon and sold by appellant under and by virtue of this second writ.

Respondent further testified that the hogs sold under and by virtue of the· second writ were made up, partly, of the stock he purchased at the former execution sale and partly of stock he bought, from time to time, since that sale.

Appellant introduced a taxpayer's statement, signed by respondent on May 7, 1915, stating that he possessed no hogs which were subject to assessment on the second Monday of January of that year, and a like statement, signed March 16,

1915, by Warren Sweeten showing ownership by him of 40 hogs. Appellant contends these tax statements prove that the animals levied upon and sold belonged, at the time of the levy, not to respondent but to his brother, the judgment debtor named in the execution.

Appellant contends that the hogs never were in respondent's possession but have always been in the possession of his brother, Warren, and that there was neither a constructive nor actual delivery of the same to the respondent. He takes this position having in view, no doubt, sec. 3170, Rev. Codes, providing: ''Every transfer of personal property, other than a thing in action, and every lien thereon, other than a mortgage, when allowed by law, is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery and followed by an actual and continued change of possession of the thing transferred, to be fraudulent, and therefore void, as against those who are his creditors while he remains in possession. . . . . ''

If respondent had claimed the hogs in question by virtue of a sale from Warren Sweeten to himself and had left them in Warren's possession, then, according to the statute above cited, the *bona fides* of the transaction might well be questioned, but as respondent obtained his title, not through Warren Sweeten, but through a judicial sale made by the sheriff of Oneida county upon a writ of execution, the above cited statute does not apply.

There is no evidence to dispute the respondent's statement that he used his own money in the purchase of the hogs and that he purchased them for his own use and benefit, and that he also used his own money in purchasing hogs subsequent to that time and up to and including the time of the levy and sale by appellant, and though upon cross-examination respondent's memory was faulty, and he could not remember how many hogs were purchased or sold by him, or by his brother Warren upon his account, or for what prices, this was merely matter touching his credibility, and we cannot say

that his vague statements and faulty memory in this respect show that his claims of ownership were false.

The taxpayer's statement made by Warren Sweeten conflicts with the testimony of respondent and so, in a measure, does that of respondent himself, but his explanation that he believed at the time he made the statement that these hogs would be assessed with the land upon which Warren lived, which was in another assessment district than the one wherein he resided, and that if he listed them there would be a double assessment, is reasonable, and there is no doubt that if he had mentioned them in his statement, they would have been twice assessed.

Considering the evidence, as a whole, on the question of ownership, we cannot say that, as a matter of law, the trial judge should have arrived at the conclusion that the hogs, at the time of the levy and sale by appellant, were the property of Warren Sweeten and not of respondent.

"An appellate court will not disturb the judgment of a trial court, because of conflict in the evidence, where there is sufficient proof, if uncontradicted, to sustain it." (*Darry v. Cox,* 28 Ida. 519, 155 Pac. 660, and cases therein cited.)

Appellant further contends that there is not sufficient proof to establish the value of the property at $1,100, or the fact that respondent sustained damages in addition to its value in the sum of $200. The respondent testified that he had been, for many years, engaged in the business of buying and selling hogs in the locality in which the stock in controversy was situated and that the reasonable value of the animals levied upon and sold by appellant was $1,500. Respondent's father likewise qualified himself and testified to the same value. It was stipulated that the hogs so levied upon and sold were resold shortly afterward for $1,000. The trial court found $1,100 to be the reasonable value of the property. We cannot say this was excessive. At most there is a substantial conflict in the evidence in regard to value.

Respondent testified that, by reason of the wrongful taking and selling of his property, he lost time in going back and forth between his residence and Malad; that he lost pasture

advantages; lost the advantage of "clearing around the thresh-ing," and that when he put his damage in this respect at the sum of $200 he "put it very light." Appellant offered no testimony whatever to refute respondent's claim in this respect, and we do not think the trial court erred in allowing the further sum of $200 as compensation for the loss above mentioned.

The judgment and order appealed from are affirmed. Costs are awarded to respondent.

Budge, C. J., and Rice, J., concur.