[Civ. No. 6399.   Second Appellate District, Division Two.—December 30, 1930.]

WILLIAM F. PANN, etc., Respondent v. FAY FRUIT COMPANY (a Corporation), Appellant.

Henry O. Wackerbarth, Henry E. Carter and Joseph A. Adair for Appellant.

Frank G. Falloon for Respondent.

THOMPSON (IRA F.), J.—This is an appeal from a judgment in favor of the plaintiff in the sum of $1562.30,

and representing the full purchase price of a carload of oranges purchased of defendant at Santa Ana, California. The material facts are as follows: On December 4, 1922, a representative of appellant called respondent on the telephone and asked him if he had any orders; quoted respondent two cars of navels, one for shipment that day and one on the following day. Respondent inquired concerning the quality and particularly concerning the color. The fruit was represented to be of "good color and good full pack". Respondent replied that he would wire the car out and confirm the following day, which he did, receiving in return bill of lading and manifest. Respondent also informed appellant's representative that he was relying upon his representations entirely as to the quality. Respondent paid appellant the sum of $1562.30 for the oranges. On the arrival of the car at Youngstown, Ohio, it was found, according to the testimony of at least one witness, that the "color was dead green and couldn't even be identified as oranges"; that "they were worthless", although there was a "good market" and "heavy demand" for California oranges. According to the chief food inspector of Youngstown he found the "shipment of oranges to be too green to be marketable" and estimated their condition as follows: "yellow—8%; 10—25% green—30%; light green 27%; ¼ to ½ green 20%; more than ½ green 15%". When this condition of the fruit was reported to respondent he advised appellant and demanded that it receive the oranges back, which demand it refused, whereupon he diverted the car to New York and sold these oranges which had been robbed of sufficient California sunshine, at public auction, realizing therefrom the sum of $41.80 in excess of the freight, or a total of $752.40. It was alleged in the complaint and not denied that respondent was engaged in the business of buying fruit in California and shipping it to purchasers in the east, all of which was known to appellant. Further, the respondent testified that "very likely" he told appellant's representative where the car was going and the latter testified that he thought respondent told him "he was purchasing for an eastern purchaser". It should be observed, of course, that we have recited the testimony supporting the respondent's cause of action and not the testimony adduced by appellant in conflict therewith.

██ It is now insisted by appellant that certain portions of the findings of the court are unsupported by the testimony. It is obvious from our review that the following contested portions thereof do find sufficient support:

(a) ''That plaintiff purchased said fruit for the purpose of selling same in the eastern holiday markets, and defendant at the time it sold same to plaintiff knew that plaintiff was purchasing said fruit for that specific purpose.''

(b) ''That plaintiff purchased said fruit from defendant upon the statements, representations, assurances and warranties of defendant that said oranges and all thereof were of good color, marketable, sound and merchantable.''

(c) ''That said oranges were not of good color but were too green to be merchantable or marketable and were so green as to be worthless to plaintiff; that defendant made said representations for the purpose of deceiving plaintiff and inducing plaintiff to purchase said oranges well knowing that said oranges were not marketable and were not merchantable.''

(d) ''That when plaintiff learned of the falsity of said statements, representations, assurances and warranties, he immediately tendered the whole of said car to defendant and notified defendant that he would not accept same; that defendant refused to accept such tender and refused to have anything more to do with said carload of oranges.''

There is another part of a finding which is attacked, to wit: ''That said oranges . . . were of no value whatsoever at Santa Ana, California, or Los Angeles, California, or at any eastern market by reason of the fact that said oranges were not of good color and were not as represented by defendant.'' There was no testimony that the oranges were not of any value at Santa Ana, or Los Angeles, and it is to be observed that the court simply declared that they were of no value, deducing his conclusion from their condition, which was described by witnesses, the effect of which testimony we have already set down. ██ Aside from this fact, however, arises the question of whether their value here or their value in the eastern market is the governing factor. The appellant contends that the value at Santa Ana must be considered as determining the situation, but · in this we do not agree. In the recent case of *Brandenstein* v. *Jackling*, 99 Cal. App. 438 [278 Pac. 880], it is said:

"Moreover it was proper to measure the damages as of the time and place of arrival of the rice at Cuba under the authority of *W. R. Grace & Co.* v. *Levy,* 30 Cal. App. 231 [156 Pac. 626]. Appellants knew the rice was to be shipped to Cuba by the terms of the contract and the contract likewise apprised them that no inspection as to quality No. 1 would be made by respondents at point of shipment. (See, also, 22 Cal. Jur. 1022, and cases cited, and *Porter* v. *Gestri,* 77 Cal. App. 578 [247 Pac. 247].)" The authorities cited in the quoted matter fully support the rule and effectually dispose of appellant's argument.

Two other excerpts from the findings to which objection is made relate solely to the question of demand and damages. Further comment is unnecessary.

■ While it is said that a finding responsive to an affirmative defense upon which issue no testimony was presented is not supported by the evidence, the point actually presented is that the court committed error in refusing appellant's offer of a chart (apparently colored) prepared by the bureau of standardization of the state department of agriculture, and not by the witness, who was a deputy horticultural commissioner of the county of Los Angeles. The purpose of the offer in the words of counsel was "as showing the color scheme, or document as prepared by this department showing oranges which are approximately 25% colored and oranges approximately 70% colored, said chart being made under the provisions of the Standardization Act of 1921". We are unable to conceive how the chart would have assisted the court in arriving at the conclusion that the oranges were seventy per cent colored at the time of the packing or that they were marketable and merchantable. There was no error in its rejection.

■ The court did commit one error. It failed to deduct from the purchase price the sum of $41.80 recouped by respondent. That sum should be deducted from the amount of the judgment.

The judgment is modified by reducing it to the sum of $1520.50, and as so modified it is affirmed.

Works, P. J., and Craig, J., concurred.